UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAHOE REGIONAL PLANNING AGENCY,<br><br>        Plaintiff,<br><br>   v.<br><br>DANIL RESIAPKINE,<br><br>        Defendant. | Case No. 2:21-cv-02235-DAD-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Tahoe Regional Planning Agency alleges that defendant Danil Reziapkine violated the Tahoe Regional Planning Compact by mooring a watercraft and operating a rental concession in Lake Tahoe without authorization. Defendant failed to timely answer the complaint, and plaintiff now moves for default judgment. Plaintiff's motion was before the court for hearing on June 1, 2023. Attorney John Marshall appeared on behalf of plaintiff; defendant failed to appear. I recommend that plaintiff's motion be granted.

**Background**

In the late 1960's, California, Nevada, and the federal government adopted the Tahoe Regional Planning Compact ("Compact"), which established the Tahoe Regional Planning Agency ("TRPA") to coordinate and regulate development in the Lake Tahoe Basin. ECF No. 1 ¶ 9; Pub. L. No. 91-148, 83 Stat. 360 (1969); *amended* Pub. L. 96-551, 94 Stat. 3233; Calif.

1

1   Gov't. Code §§ 66800 & 66801; NRS §§ 277.190 & 277.200; *Tahoe-Sierra Pres. Council v.*
2   *Tahoe Reg'l Planning Agency*, 535 U.S. 302, 308-09 (2002).  In 1987, the TRPA adopted a
3   Regional Plan, which includes enforceable regulations relating to "the preservation, development,
4   utilization, and management of the scenic and other natural resources within the basis."  Article
5   V, Compact.  That plan is implemented by the Code of Ordinances ("Code") promulgated by the
6   TRPA.  *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 739 F. Supp. 2d 1260, 1266
7   (E.D. Cal. 2010) *aff'd in part, vacated in part, remanded*, 469 F. App'x 621 (9th Cir. 2012).

8   Of relevance to this action, the Code provides that watercraft that remain on Lake Tahoe
9   overnight must "be moored to legally existing buoys, boatlifts, boat slips, or other legally existing
10  watercraft storage facilities."  TRPA, Code of Ordinances, Chapter 84.10.1.A (effective February
11  9, 2013, amended July 25, 2022).  It also specifies that concessions, which includes recreational
12  equipment rentals, must moor on legally permitted mooring structures.  *Id.* 84.10.2.C.4.a.

13  According to the complaint, in the summer of 2021, plaintiff received a report that a
14  watercraft was being moored and operated as a concession in the Regan Beach area without
15  authorization.  ECF No. 1 ¶ 19.  In the course of investigating the complaint, defendant was
16  identified as an owner of the watercraft.  *Id*.  On July 9, 2021, plaintiff called defendant and
17  requested that he cease illegally mooring the watercraft and stop renting it from the Regan Beach
18  area.  *Id*. ¶ 20.  Defendant refused, explaining that he had been operating his rental business from
19  that location for multiple years.  *Id*.  On August 3, 2021, plaintiff mailed defendant a cease and
20  desist order requiring that the watercraft immediately be removed from Lake Tahoe.  *Id*. ¶ 21.
21  The following month, after defendant failed to take corrective action, plaintiff issued a Notice of
22  Violation and Violation Report.  *Id*. ¶¶ 22-23.  That notice also received no response, prompting
23  plaintiff to file this action.

24  Following the December 2022 commencement of this action, plaintiff spent the following
25  six months attempting to serve defendant.  After seven failed attempts, plaintiff moved for
26  permission to complete service by publication.  ECF No. 12.  On August 30, 2022, the court
27  granted that motion.  ECF No. 18.  However, on the same date, plaintiff filed a notice of
28  withdrawal of its motion, which explained that plaintiff had been able to serve defendant.  ECF

1  No. 17.  Plaintiff subsequently filed a request for entry of defendant's default—showing that
2  defendant was personally served on August 21, 2022, ECF No. 19-1—which the Clerk of Court
3  entered on November 1, 2022, ECF No. 20.
4        On December 28, 2022, nearly two months after entry of default, defendant filed an
5  answer to the complaint.  ECF No. 21.  Plaintiff moved to strike defendant's answer, arguing that
6  it was untimely filed and procedurally improper given that defendant had not moved to set aside
7  his default.  ECF No. 22.  After defendant failed both to respond to that motion and to appear at
8  the noticed hearing, the court granted plaintiff's motion and struck defendant's answer.  ECF No.
9  25.  Plaintiff now moves for default judgment.  ECF No. 26.

**Legal Standard**

Under Federal Rule of Civil Procedure 55, default may be entered against a party who fails to plead or otherwise defend against an action.  *See* Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).  Rather, the decision to grant or deny a motion for default judgment is discretionary.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising discretion, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "In applying this discretionary standard, default judgments are more often granted than denied."  *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

Generally, once default is entered "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th

Cir. 1977)).  However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

**Discussion**

    A.    <u>Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors</u>

The merits of plaintiff's substantive claims and the sufficiency of the complaint—factors two and three—weigh in favor of default judgment.  As set forth above, the complaint alleges that defendant violated the Code by mooring his watercraft in the Regan Beach area from June 4, 2021, through at least November 5, 2021, without authorization.  ECF No. 1 ¶¶ 17-22.  The complaint further alleges that during the same period, defendant operated a concession by renting his watercraft to patrons with a permit.  *Id*.  The complaint's allegations are sufficient to state a claim for multiple violations of the Compact and its implementing Code.

Furthermore, many of the remaining *Eitel* factors weigh in favor of granting plaintiff's motion.  Defendant was properly served, ECF No. 19, and appeared in this action after his default was entered.  Defendant, however, neither sought to set aside his default nor responded to plaintiff's motion to strike his answer.  Thus, there is no basis for concluding that default was entered due to excusable neglect.  The civil penalties sought are not disproportionate to defendant's conduct and, indeed, are authorized by the Compact.  And accepting plaintiff's allegations as true, there is little possibility of a dispute concerning material facts.  *See Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").  Additionally, because defendant has essentially refused to defend against plaintiff's claim, plaintiff has no means of obtaining relief apart from default judgment.  Finally, although decisions on the merits are favored, the court cannot reach the merits where the defendant declines to take part in the action.  *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1093 (N.D. Cal. 2008).  Accordingly, plaintiff is entitled to default judgment.

B.     Requested Relief

Plaintiff seeks civil penalties in the amount of $75,000, plus an injunction retraining defendant from anchoring or mooring his watercraft in Lake Tahoe absent use of an approved, legal mooring.

The Compact provides that "[a]ny person who violates any provision of this compact or of any ordinance or regulation of the agency or of any condition of approval imposed by the agency is subject to a civil penalty not to exceed five thousand dollars ($5,000)." Article VI(l), Compact. Violators are also "subject to an additional civil penalty not to exceed five thousand dollars ($5,000) per day, for each day on which such a violation persists." *Id*. In imposing civil penalties, "the court shall consider the nature of the violation and shall impose a greater penalty if it was willful or resulted from gross negligence than if it resulted from inadvertence or simple negligence." *Id*. In assessing the nature of the violation, courts have considered: (1) "[t]he egregiousness of the violation;" (2) "[t]he environmental consequences of the violation;" (3) "[t]he length of time the violation persisted;" and (4) any efforts that "were made to mitigate any environmental damages." *Tahoe Reg'l Planning Agency v. Terrace Land Co., Inc.*, 772 F. Supp. 506, 509 (D. Nev. 1991).

I find that plaintiff's request to impose $75,000 in civil penalties is reasonable in light of the nature and willfulness of defendant's violations. Plaintiff's evidence demonstrates that in 2021 alone, defendant unlawfully moored his boat for at least 118 days. ECF No. 26-3 ¶¶ 3-6. Even if the court were to assume that defendant's initial violation was unintentional—or least done without knowledge that mooring his watercraft and operating a rental concession required authorization—the record demonstrates that defendant ignored plaintiff's demands to comply with the Code. *Id*. Although there is no indication that defendant's conduct resulted in significant, lasting environmental consequences, defendant's disregard of plaintiff's demand for compliance was egregious and willful. Moreover, $75,000 in civil penalties is less than the amount authorized by the compact for defendant's continued violations, which spanned at least several months.

Plaintiff is also entitled to the requested injunctive relief. To obtain a permanent injunction, a "plaintiff must show: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1019 (9th Cir. 2009).

The record demonstrates that plaintiff has, and will continue to, suffer irreparable harm absent an injunction. The concession permit and mooring authorization ordinances were implemented pursuant to the Compact's directive that TRPA create environmental standards "necessary to maintain a significant scenic, recreational, educational, scientific or natural value of the region or to maintain public health and safety within the region." *Sierra Club*, 916 F. Supp. 2d at 1105. Defendant's violations of the Code impair the Compact's goal of maintaining Lake Tahoe's scenic beauty and recreational activity by interfering with TRPA's ability to regulate the number of watercrafts and concessions on the lake. *See People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1324 (9th Cir. 1985) ("[T]he Compact, which has been adopted as law by the California and Nevada legislatures and by Congress, expresses a legislative judgment that development and urbanization of the Lake Tahoe region pose a threat to the 'irreplaceable' environmental and ecological values of the region."), *amended on other grounds*, 775 F.2d 998 (9th Cir. 1985). The record also suggests that defendant is likely to continue violating the Code. In 2021, TRPA made multiple demands for defendant to cease illegally mooring his watercraft and operating his rental concessions. The demands were ignored, and by summer 2022, defendant had "resumed his unauthorized activities on Lake Tahoe." ECF No. 26-2 at 3.

The balance of hardships also weighs in favor of a permanent injunction. Defendant has no right to continue his unlawful activity, and TRPA has duty to prevent such violations. *See Terrace Land Co., Inc.*, 772 F. Supp. 2d at 512. Lastly, the public has an interest in preserving Lake Tahoe's scenic beauty and environment, which could be eroded if unauthorized mooring and rental concessions were allowed to flourish. Moreover, the Compact was created to prevent

irreparable environmental harms to Lake Tahoe and the surrounding watershed.  Consequently, since plaintiff has shown that environmental injury is "sufficiently likely, the balance of the harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod. Co.*, 480 U.S. at 545.

For the reasons stated above, it is hereby RECOMMENDED that:

1. Plaintiff's motion for default judgment, ECF No. 26, be granted.

2. Judgment be entered in plaintiff's favor and against defendant for civil penalties in the amount of $75,000.

3. Defendant be permanently enjoined from operating a rental concession without a permit and from anchoring or mooring any watercraft that he owns or controls in the waters of Lake Tahoe, except for moorings that have been approved and by TRPA.

4. The Clerk of Court be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   June 20, 2023                                   _____
                                                         JEREMY D. PETERSON
                                                         UNITED STATES MAGISTRATE JUDGE